Otis Blackwell v. Commissioner.
Blackwell v. Commissioner
Docket No. 2919-63.
United States Tax Court
T.C. Memo 1965-252; 1965 Tax Ct. Memo LEXIS 79; 24 T.C.M. (CCH) 1367; T.C.M. (RIA) 65252; September 17, 1965
John E. McDermott, Jr., for the respondent. MULRONEY Memorandum Findings of Fact and Opinion MULRONEY, Judge: Respondent determined deficiencies in petitioner's income tax and additions thereto for the following years and in the following amounts: Additions to Tax,
I.R.C. 1954
Sec.
Sec.
Years
Deficiencies
6653(b)
6654(a)
1960
$20,386.92
$10,193.46
$560.44
1961
8,698.02
4,349.01
231.46
The issues in the case are: (1) Did the petitioner have gross income in the amount of $42,581.87 for the year 1960 and $25,802.24 for the year 1961? (2) Did the petitioner fail to timely file his income tax returns for each of the years 1960 and 1961? (3) Did the petitioner with intent to evade and defeat payments of taxes wilfully and fraudulently *80 fail to timely file his income tax returns for each of the years 1960 and 1961? Findings of Fact Petitioner failed to appear at the time of trial or provide representation. Respondent made diligent efforts to locate petitioner for several months before trial but his whereabouts at the time of trial was unknown. Petitioner's last known address is 175 Willoughby Street, Brooklyn, New York. Petitioner was born on February 16, 1932 in Brooklyn, New York. The petitioner completed two terms of high school in Brooklyn, New York, and terminated his formal education at the age of 17. The petitioner's employment in the years immediately after he left high school consisted of being a presser in the garment industry, working on an oil truck, restaurant worker, delivering ice and various other jobs. Petitioner subsequently became a song writer. He wrote his first hit song in 1957 and thereafter, at least through the year 1961, he received substantial royalty income. The petitioner filed income tax returns for each of the years 1957, 1958 and 1959, which were prepared by a certified public accountant, from information presented by the petitioner and the petitioner's attorney. The petitioner *81 kept inadequate records to reflect his income and expenses causing the accountant to seek information from third party sources and to prepare the petitioner's 1959 return with estimated figures. Although the accountant suggested to the petitioner that he was available to prepare petitioner's 1960 return before the due date of that return, the petitioner failed to authorize the accountant to prepare that return or furnish him with information for the preparation of that return. The accountant had warned the petitioner before the due date of the 1960 return that he would not be able to continue to prepare petitioner's returns unless the petitioner furnished better records or information to him. The petitioner failed to keep a complete set of books and records for the years 1960 and 1961. He only kept bank statements and cancelled checks and failed to retain information forms 1099 and W-2 showing his receipt of income during each of those years. During the years in issue, the petitioner was married and had three children. He paid rent amounting to approximately $200 per month, sent his children to a private school, gave his wife jewelry and furs costing approximately $1,500 and *82 owned an automobile for which he paid approximately $5,000. Although the petitioner filed his income tax returns for 1958 and 1959, he failed to voluntarily remit the entire amount of taxes indicated as due and owing on those returns and on July 11, 1961 a revenue officer was assigned to enforce collection of such taxes, which for 1958 amounted to $10,000. The record of the revenue officer's efforts to collect petitioner's delinquent tax accounts during 1961 and 1962 consists of many promises and appointments broken by petitioner, the filing of tax liens and, finally, enforcement of summons. Petitioner finally did appear before the enforcement officer in December of 1962 and at this time admitted he had not filed his income tax returns for 1960 and 1961. When petitioner failed to keep appointments with the revenue agent, his income for the years 1960 and 1961 was reconstructed by the agent from third party sources and notice of deficiencies in income tax for said years was issued March 29, 1963. On October 25, 1963 the petitioner again appeared at the office of respondent's Intelligence Division with his attorney and accountant. He was informed that criminal prosecution was *83 contemplated against him for his failure to file returns for 1960 and 1961. On December 23, 1963 the petitioner simultaneously filed joint income tax returns with his wife in the Manhattan District for each of the years 1960 and 1961. Petitioner's gross income during 1960 and 1961 from salaries and royalties as determined by respondent substantially coincides with that reported by petitioner on his delinquent returns, and are as follows: Year
1960
1961
Salaries
$ 1,300.00
$ 3,242.04
Royalties
41,281.87
22,560.20
Total Gross Income
$42,581.87
$25,802.24
A part of the underpayment of tax required to be shown on petitioner's returns was due to fraud within the meaning of section 6653(b) of the Internal Revenue Code of 1954. Opinion Respondent's determination of the deficiencies and the additions to tax under section 6654 (for failure to pay estimated tax) are presumptively correct. Since there was no evidence to the contrary, respondent's determinations are sustained. Respondent had the burden to establish the additions to tax for each of the years 1960 and 1961 under section 6653(b) (fraud). The issue is whether the *84 evidence warrants a finding that the failure to file timely returns was a willful and deliberate attempt to avoid the payment of tax. It has long been held that fraud, which gives rise to the additions under section 6653(b), can be established by evidence showing the willful failure to make a return as well as the deliberate filing of a fraudulent return. Powell v. Granquist, 252 F. 2d 56; Fred N. Acker, 26 T.C. 107; and Charles F. Bennett, 30 T.C. 114. The evidence here is, of course, all uncontroverted as petitioner did not appear. It leads to the inescapable conclusion that petitioner's failure to file timely returns for the years 1960 and 1961 was fraudulent and in deliberate defiance of the law. He received substantial income in each of those years and he knew that he had to pay tax on this income since he had filed returns for previous years. His failure to file returns can only be interpreted as an attempt to conceal this income from the taxing authorities and his other actions plainly indicate a plan on his part to evade the tax. It was not until he was informed by the Intelligence Division that criminal prosecution was being contemplated *85 against him for his failure to file his 1960 and 1961 returns, that he filed delinquent returns. Of course, the filing of such delinquent returns does not mitigate the fraud. Charles F. Bennett, supra. We hold for respondent on the issues presented but because respondent admits there should be some small adjustments in petitioner's favor, Decision will be entered under Rule 50.